**HALPER SADEH LLP**
Zachary Halper, Esq.
186 Darwin Lane
North Brunswick, NJ 08902
Tel: (212) 763-0060
Fax: (646) 776-2600
Email: zhalper@halpersadeh.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALAN MISENHEIMER, <br><br> Plaintiff, <br><br> v. <br><br> AKERS BIOSCIENCES, INC., CHRISTOPHER C. SCHREIBER, JOSHUA SILVERMAN, BILL J. WHITE, and ROBERT SCHROEDER, <br><br> Defendants. | Case No: <br><br> **COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Alan Misenheimer ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

## **NATURE OF THE ACTION**

1.       This is an action against Akers Biosciences, Inc. ("Akers" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in

connection with Akers's proposed merger (the "Proposed Transaction") with MyMD Pharmaceuticals, Inc. ("MyMD") and XYZ Merger Sub, Inc. ("Merger Sub").

2.      In connection with the Proposed Transaction, Merger Sub will merge with and into MyMD, with MyMD surviving the merger as a wholly owned subsidiary of Akers. Upon completion of the merger, MyMD stockholders will receive Akers common stock in exchange for their MyMD common stock. MYMD stockholders and optionholders will own approximately 80% of the equity of the combined company while Akers stockholders and certain holders of outstanding options, warrants, and restricted stock units will only own approximately 20% of the equity of the combined company

3.      On January 15, 2021, Defendants caused to be filed with the SEC a Form S-4 Registration Statement (the "Registration Statement") under the Securities Act of 1933 in connection with the Proposed Transaction.

4.      The Registration Statement, which recommends that Akers shareholders vote in favor of, among other things, the issuance of Akers common stock in connection with the Proposed Transaction (the "Stock Issuance"), omits and/or misrepresents material information concerning: (1) Akers's and MyMD's financial projections; (2) the financial analyses performed by Akers's financial advisor, Gemini Valuation Services, LLC ("Gemini"), in connection with its fairness opinion; (3) potential conflicts of interest involving Akers's other advisors, Palladium Capital Advisors, LLC ("Palladium) and Biologics Consulting Group, Inc. ("Biologics Consulting"); and (4) potential conflicts of interest involving Company insiders.

5.      These material misrepresentations and omissions prevent the Company's shareholders from making a fully informed voting decision on the Stock Issuance proposal. Accordingly, the Company's shareholders will be irreparably harmed if these material

misrepresentations and omissions are not remedied before the anticipated shareholder vote on the Stock Issuance.

## JURISDICTION AND VENUE

6.      The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

7.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, the alleged misstatements entered and the subsequent damages occurred in this District, the Company is incorporated in this District, and the Company had principal executive offices in this District leading up to the execution of the merger agreement in connection with the Proposed Transaction.

9.      In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

10.     Plaintiff is, and has been at all relevant times hereto, an owner of Akers common stock.

11.     Defendant Akers focuses on the development of a COVID-19 vaccine. It has a collaboration agreement with Premas Biotech PVT Ltd. for the development of a COVID-19

vaccine. The Company had its headquarters located in Thorofare, NJ. The Company is incorporated in New Jersey. The Company's common stock trades on the NASDAQ under the ticker symbol, "AKER."

12.     Defendant Christopher C. Schreiber ("Schreiber") is President, Chief Executive Officer ("CEO"), and a director of the Company.

13.     Defendant Joshua Silverman ("Silverman") is Chairman of the Board of the Company.

14.     Defendant Bill J. White ("White") is a director of the Company.

15.     Defendant Robert Schroeder ("Schroeder") is a director of the Company.

16.     Defendants Schreiber, Silverman, White, and Schroeder are collectively referred to herein as the "Individual Defendants."

17.     Defendants Akers and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A.  The Proposed Transaction

18.     On November 12, 2020, Akers and MyMD issued a press release announcing the Proposed Transaction, stating in pertinent part:

### Akers Biosciences and MyMD Pharmaceuticals Sign Definitive Merger Agreement

● *Immunotherapies focused on age-related disorders and autoimmune diseases entering Phase 2 clinical trials*

● *Lead molecule MYMD-1 inhibits production of tumor necrosis factor alpha (TNF-α), a cell signaling protein involved in systemic inflammation, in preclinical studies*

● *Entered into Securities Purchase Agreement for $18M private placement of common stock and warrants priced at-the-market under Nasdaq Rules*

4

November 12, 2020 09:00 AM Eastern Standard Time

BALTIMORE & THOROFARE, N.J.--(BUSINESS WIRE)--MyMD Pharmaceuticals, Inc. ("MyMD") and Akers Biosciences, Inc. ("Akers") (NASDAQ: AKER) today jointly announced that they have entered into a definitive merger agreement. Upon closing the transaction, the combined company is expected to be renamed MyMD Pharmaceuticals, Inc. and remain listed on the Nasdaq under the new ticker symbol "MYMD."

The companies plan to hold a video conference for investors on Wednesday, November 18, 2020 at 4:15 p.m. ET to provide additional context on the integrated company, the clinical pipeline and drug development plan, and the commercial potential of the targeted indications. To participate in the briefing session, please click on the link below to register.

- Event Link: https://www.webcaster4.com/Webcast/Page/2584/38815

- Participant Dial In: Toll Free: 877-407-0778; International: 201-689-8565

Following the merger, the two companies will join as one to focus on developing and commercializing MyMD's novel immunotherapy pipeline assets, including MYMD-1, a first-in-class drug being developed to treat autoimmune and age-related diseases, including extending the human lifespan. MYMD-1 has been shown to be effective in regulating the immune system from causing age-related diseases in preclinical studies and MyMD believes that it is the first oral small molecule regulator of tumor necrosis factor alpha (TNF-$\alpha$) capable of crossing the blood-brain barrier. Looking forward, MyMD intends to also continue to develop its second asset, SUPERA-1R, a drug platform based on a patent-protected, synthetic derivative of cannabidiol (CBD) that seeks to target key cannabinoid receptors.

A Phase 1 study on MYMD-1 has been completed, with plans to begin two Phase 2 clinical trials in Q1 2021 and additional Phase 2 clinical trials throughout 2021. Preclinical data, showing the effectiveness of MyMD-1 in treating autoimmune diseases, were compiled by nationally recognized researchers and laid the foundation for the studies, securing peer-reviewed publications in The Journal of Immunology and the Journal of Neuroimmunology.

"Over the last seven years, MyMD has advanced its robust drug development program, achieving very encouraging preclinical and Phase 1 clinical data," said Chris Chapman, M.D., Chief Medical Officer of MyMD. "As we enter Phase 2 clinical trials and continue to advance our drug candidates toward commercialization--we believe this merger is the natural next step for us. Gaining access to the public capital markets, along with Akers' capital resources, should allow us to accelerate our plans and elevate MyMD within the emerging fields of aging, immunometabolic regulation and TNF$\alpha$ inhibition."

The mechanism of action for MYMD-1 involves shutting down the production of TNF-α, offering the potential to reshape clinical guidelines and treatment approaches for aging and a number of autoimmune diseases including diabetes, rheumatoid arthritis and multiple sclerosis.

Reflecting on the rationale for the merger, Chris Schreiber, Executive Chairman and President of Akers, stated, "We are excited about this strategic opportunity to focus on MyMD's promising clinical development program and worldwide patent position. Through this transaction, the company will be committed to delivering novel, multi-indication platform drugs designed to extend healthy lifespan and treat the source of chronic autoimmune diseases. We are highly excited about MyMD's broad development program focused on two drug platforms that address enormous market potential. We believe that our merger with MyMD should provide us with additional value creation opportunities, in addition to our COVID-19 vaccine candidate that we have been working with our partners in India to develop."

## Management and Organization

The combined company will be led by Chris Chapman, M.D., who will become President and Chief Medical Officer of MyMD, and Adam Kaplin, M.D., who will become Chief Scientific Officer of MyMD, and is planned to be headquartered in Baltimore, Maryland. Dr. Chapman is the founder and CEO of Chapman Pharmaceutical Consulting Inc. and will bring extensive experience working with biotechnology companies in the design of clinical trial protocols, conducting clinical trials and advising on regulatory and medical affairs. Dr. Kaplin, the prior founder and chief of the Neuropsychiatric CNS Autoimmune Consultation Clinic, at the Johns Hopkins Multiple Sclerosis Center of Excellence, and an assistant professor of psychiatry and behavioral sciences at the Johns Hopkins University School of Medicine, has consulted with multiple hospitals, biotechnology companies and non-profit organizations on medical and development matters.

## Transaction Details

On a pro forma basis and based upon the number of shares of Akers common stock to be issued in the merger, current Akers' shareholders will own approximately 20% of the combined company, on a fully diluted basis, and current MyMD's shareholders will own approximately 80% of the combined company on a fully diluted basis (excluding the effect of warrants issued in the below described private placement). The merger agreement also provides for additional contingent payments in cash and shares to the stockholders of MyMD under certain circumstances. The merger is expected to close in the first half of 2021, subject to the approval of Akers' shareholders at a special shareholder meeting, as well as other customary closing conditions.

In connection with the definitive merger agreement, Akers agreed to loan MyMD up to $3 million pursuant to a secured promissory note. The note bears interest at

5% per annum, has a maturity date of April 15, 2022 and is secured by a first lien on MyMD's assets.

**Private Placement**

Concurrently with the execution of the merger agreement with MyMD, Akers entered into a securities purchase agreement with certain accredited investors to raise $18 million through the issuance of up to 9,765,933 shares of common stock (or common stock equivalents) and accompanying warrants to purchase an aggregate of up to 9,765,933 shares of common stock at $1.85 per share of common stock and accompanying warrant. The warrants are immediately exercisable at an exercise price of $2.06 per share, with an expiration date of five and one-half years after the date of issuance. The offer and sale of the foregoing securities are being made in a transaction not involving a public offering and have not been registered under the Securities Act of 1933, as amended (the "Securities Act"), or applicable state securities laws.

Accordingly, the securities may not be reoffered or resold in the United States except pursuant to an effective registration statement or an applicable exemption from the registration requirements of the Securities Act and such applicable state securities laws.

Under an agreement with the investors, the Company is required to file a registration statement with the Securities and Exchange Commission covering the resale of the shares of common stock to be issued to the investors and to use best efforts to have the registration statement declared effective as promptly as practical thereafter.

The closing of the private placement is subject to the satisfaction of certain customary closing conditions set forth in the securities purchase agreement.

**About Akers Biosciences Inc.**

Akers Biosciences is pursuing rapid development and manufacturing of a COVID-19 vaccine candidate in collaboration with Premas Biotech PVT Ltd.

**About MyMD Pharmaceuticals, Inc:**

MyMD is a clinical stage pharmaceutical company committed to extending healthy lifespan by focusing on developing two therapeutic platforms. MYMD-1 is a drug platform based on a clinical stage small molecule that regulates the immunometabolic system to control TNF-α and other pro-inflammatory cytokines. MYMD-1 is being developed to treat autoimmune diseases, including those currently treated with TNF-α blocking drugs, and aging and longevity. SUPERA-1R is a drug platform based on a novel (patent pending) synthetic derivative of cannabidiol (CBD) that targets numerous key receptors including CB2 and opioid receptors and inhibits monoamine oxidase. SUPERA-1R is being developed to address the rapidly growing CBD market, that includes FDA approved drugs and

CBD products not currently regulated as a drug. For more information, visit www.mymd.com.

**No Offer or Solicitation**

This communication shall not constitute an offer to sell or the solicitation of an offer to sell or the solicitation of an offer to buy any securities, nor shall there be any sale of securities in any jurisdiction in which such offer, solicitation or sale would be unlawful prior to registration or qualification under the securities laws of any such jurisdiction. No public offer of securities shall be made except by means of a prospectus meeting the requirements of Section 10 of the Securities Act of 1933, as amended.

**B.  The Registration Statement Contains Materially False and Misleading Statements and Omissions**

19.     The Registration Statement omits and/or misrepresents material information concerning: (1) Akers's and MyMD's financial projections; (2) the financial analyses performed by Akers's financial advisor, Gemini, in connection with its fairness opinion; (3) potential conflicts of interest involving Akers's other financial advisors, Palladium and Biologics Consulting; and (4) potential conflicts of interest involving Company insiders.

20.     The omission of the material information (referenced below) renders the following sections of the Registration Statement false and misleading, among others: (i) Background of the Merger; (ii) Opinion of Akers' Financial Advisor; (iii) Akers' Reasons for the Merger; and (iv) Directors and Executive Officers of the Combined Company Following the Merger.

21.     Unless and until the material misstatements and omissions (referenced below) are remedied before the anticipated shareholder vote on the Stock Issuance, the Company's shareholders will be forced to make a voting decision on the Stock Issuance without full disclosure of all material information. In the event Defendants fail to disclose the following information before the shareholder vote, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

**1.  Material Omissions Concerning Akers's and MyMD's Financial Projections**

22.     The Registration Statement fails to disclose Akers's and MyMD's financial projections.

23.     In connection with the Proposed Transaction, Akers will issue common stock to MyMD such that Akers shareholders will only own approximately 20% of the combined company while MyMD shareholders will own approximately 80%. But the Registration Statement fails to meaningfully offer shareholders a way to evaluate the fairness of the Proposed Transaction because it omits the financial projections for Akers and MyMD.

24.     Notably, the Registration Statement fails to disclose these projections despite the fact that the Registration Statement indicates that: (i) Gemini reviewed "financial analyses and forecasts ("Projections") prepared by and provided to Gemini by the management of MYMD relating to MYMD's business"; and (ii) the Board "reviewed the current plans of MYMD for continuing to expand its business to confirm the likelihood that the combined company would possess sufficient financial resources to allow management to continue to operate, develop and commercialize MYMD's novel immunotherapy pipeline assets."

25.     Accordingly, the Registration Statement should have provided, but fails to provide, the projections concerning Akers and/or MyMD that were relied upon by the Board and/or Gemini. The Company's shareholders must be provided with any and all financial projections created by Akers, MyMD, and/or Gemini or any other financial advisor in assessing the Proposed Transaction, including projections and cash flows for Akers, MyMD, and the combined company.

26.     The disclosure of the aforementioned financial projections is material because it would provide the Company's shareholders with an objective basis to project the Company's, MyMD's, and the combined company's future financial performance, as well as assess the fairness of the deal. Shareholders cannot hope to replicate management's inside view of the future

prospects of Akers, MyMD, or the combined company. Without such information, which is uniquely possessed by Akers and/or its financial advisor, Akers shareholders are unable to make a fully informed decision concerning whether to approve the Proposed Transaction.

27.     Further, the Registration Statement fails to provide adequate information concerning the work performed by Akers's other advisors, Palladium and Biologics Consulting.

28.     Akers hired Palladium in July 2020 to "prepare an overview of MYMD's and Supera's assets for the Akers Board of Directors in order to help them evaluate its value." Palladium provided its analysis to the Board that month.

29.      Akers then hired Biologics Consulting in August 2020 "to conduct extensive scientific due diligence on MYMD." Biologics Consulting provided its final due diligence report to Akers in September 2020.

30.     The Registration Statement, however, fails to disclose: (1) the scope of Palladium's and Biologic Consulting's roles in the sales process; and (2) a fair summary of the analyses performed by Palladium and Biologics Consulting.

31.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

**2.  Material Omissions Concerning Gemini's Financial Analyses**

32.     In connection with the Proposed Transaction, the Registration Statement omits material information concerning Gemini's financial analyses.

33.     Gemini appears to have only valued MyMD using three rudimentary valuation methodologies and without having performed discounted cash flow analyses of MyMD or Akers. The Registration Statement fails to explain why Gemini did not perform a discounted cash flow analysis for MyMD and Akers.

34.     With respect to Gemini's "*Guideline Transaction Analysis*," the Registration

Statement fails to disclose the closing dates of the transactions and the premiums paid.

35.     With respect to Gemini's "*Akers Valuation Analysis*," it appears Gemini did not utilize any of Akers's projected financial information to derive a value for Akers but instead analyzed the value of prior reverse mergers and shell companies to assign a $2.0 million to $5.0 million value of the Akers exchange listed public company in addition to the $25 million of cash Akers is allocating to the merged entity to arrive at an implied value for Akers's contribution of between $27.0 million to $30.0 million. The Registration Statement must disclose the transactions and companies observed in Gemini's analysis and Gemini's basis for selecting those transactions and companies.

36.     With respect to Gemini's "*Relative Valuation Analysis*" the Registration Statement fails to disclose the pro forma net cash used in the analysis.

37.     The valuation methods, underlying assumptions, and key inputs used by Gemini in rendering its purported fairness opinion must be fairly disclosed to Akers shareholders. The description of Gemini's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, Akers shareholders are unable to fully understand Gemini's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Stock Issuance. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 3. Material Omissions Concerning Potential Conflicts of Interest Involving Palladium and Biologics Consulting

38.     The Registration Statement omits material information concerning potential conflicts of interest involving Palladium and Biologics Consulting.

39.     As noted, Palladium and Biologics Consulting had key roles in the sales process

and significant influence over the Board's decision to enter into the merger agreement in connection with the Proposed Transaction.

40.     The Registration Statement, however, fails to disclose: (1) the amount of compensation Palladium and Biologics Consulting have received or will receive in connection with their retention by the Company; (2) the amount of compensation Palladium and Biologics Consulting received or expect to receive that is contingent upon consummation of the Proposed Transaction; and (3) whether Palladium and Biologics Consulting performed past services for any parties to the Proposed Transaction and/or their affiliates, including the timing and nature of those services and the amount of compensation received for providing such services.

41.     Disclosure of the advisors' compensation and potential conflicts of interest to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives and their assessment of MyMD. Disclosure of their potential conflicts of interest may inform shareholders on how much weight to place on the Board's recommendation to approve the Proposed Transaction.

42.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 4.  Material Omissions Concerning Company Insiders' Potential Conflicts of Interest

43.     The Registration Statement omits material information concerning potential conflicts of interest involving Company insiders.

44.     The Registration Statement states the following concerning the composition of the combined entity's board of directors:

> Pursuant to the Merger Agreement, immediately after the effective time of the merger, ***the combined company's board of directors will consist of seven members, four of whom will be directors designated by Akers and will include Joshua Silverman, Akers' current chairman of the board of***

> ***directors, as chairman of the board of directors of the combined company, as well as Messrs. Christopher C. Schreiber, Bill J. White and Robert Schroeder, each of whom are current directors of Akers***. The three remaining directors of the combined company will be designated by MYMD; provided that such directors must be designated on or prior to the six-month anniversary of the closing date of the merger or the right to designate such directors will expire.

(Emphasis added.)

45.     The Registration Statement, however, fails to adequately disclose the details of all employment-related and compensation-related discussions and negotiations concerning the Company's officers and directors, including the parties to such communications, when they occurred, and the specific content discussed/communicated.

46.     Any communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to shareholders. This information is necessary for shareholders to understand potential conflicts of interest of management and the Board. Such information may illuminate the motivations that would prevent fiduciaries from acting solely in the best interests of the Company's shareholders.

47.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

48.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

49.     During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Registration Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section

14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

50.     Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Registration Statement with respect to the Proposed Transaction and/or Stock Issuance. The Defendants were, at minimum, negligent in filing the materially false and misleading Registration Statement.

51.     The false and misleading statements and omissions in the Registration Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Stock Issuance.

52.     By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

53.     Because of the false and misleading statements and omissions in the Registration Statement, Plaintiff is threatened with irreparable harm.

**COUNT II**
**Violations of Section 20(a) of the Exchange Act**
**Against the Individual Defendants**

54.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

55.     The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the

Registration Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Registration Statement.

56.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Registration Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

57.     In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Registration Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Registration Statement at issue contains the recommendation of the Individual Defendants to approve the Proposed Transaction and/or Stock Issuance. Thus, the Individual Defendants were directly involved in the making of the Registration Statement.

58.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction and/or Stock Issuance. The Registration Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input

from the Individual Defendants.

59.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

60.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.    Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Stock Issuance, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B.    In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.    Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D.    Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E.    Granting such other and further relief as the Court may deem just and proper.

## <u>JURY TRIAL DEMANDED</u>

Plaintiff hereby demands a trial by jury.

Dated: February 10, 2021          Respectfully submitted,

**HALPER SADEH LLP**

<u>/s/ Zachary Halper</u>
Zachary Halper, Esq.
186 Darwin Lane
North Brunswick, NJ 08902
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: zhalper@halpersadeh.com

Daniel Sadeh, Esq. (*pro hac vice* application forthcoming)
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600

*Counsel for Plaintiff*